# 15-455

*To Be Argued By*:
ELLEN BLAIN

## United States Court of Appeals
### FOR THE SECOND CIRCUIT
### Docket No. 15-455

➤➤

DELAMA GEORGES, Individually and on behalf of the Estate of Desilus Georges and all others similarly situated, ALIUS JOSEPH, Individually and on behalf of the Estate of Marie-

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF AFFIRMANCE

BENJAMIN C. MIZER,
  *Principal Deputy Assistant Attorney General*
SHARON SWINGLE,
  *Attorney, Appellate Staff Civil Division,*
  *Department of Justice*

MARY E. MCLEOD,
  *Principal Deputy Legal Adviser Department of State*

HENRY AZAR, JR.,
  *Attorney Adviser Department of State*

PREET BHARARA,
*United States Attorney for the Southern District of New York,*
*Attorney for the United States of America as Amicus Curiae.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2743

ELLEN BLAIN,
JEANNETTE VARGAS,
  *Assistant United States Attorneys,*
    *Of Counsel.*

Claude Lefeuve and all others similarly situated, LISETTE PAUL, Individually and on behalf of the Estate of Fritznel Paul and all others similarly situated, FELICIA PAULE, Individually and on behalf of all others similarly situated, JEAN RONY SILFORT, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

—v.—

UNITED NATIONS, UNITED NATIONS STABILIZATION MISSION IN HAITI, EDMOND MULET, FORMER UNDER-SECRETARY-GENERAL OF THE UNITED NATIONS STABILIZATION MISSION IN HAITI, BAN KI-MOON, SECRETARY-GENERAL OF THE UNITED NATIONS,

*Defendants-Appellees.*

# TABLE OF CONTENTS

PAGE

Interest of the United States. . . . . . . . . . . . . . . . . . .  2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . .  3

    A.   Conferral of Absolute Immunity Upon the
        UN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    B.   The UN's Role in Haiti . . . . . . . . . . . . . . . .  5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

POINT I—Appellants' Claims Against The United
Nations And MINUSTAH Were Properly
Dismissed For Lack Of Subject Matter
Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    A.   The UN and MINUSTAH Are Immune From
        Suit Unless Such Immunity Is Expressly
        Waived. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        1.   The UN and MINUSTAH Enjoy Absolute
            Immunity From Suit Pursuant to Section
            2 of the General Convention . . . . . . . . .  7

        2.   The Text of the General Convention
            Confirms that the UN's Immunity is Not
            Preconditioned upon Compliance with
            Section 29 . . . . . . . . . . . . . . . . . . . . . .  10

        3.   The Drafting History of the General
            Convention Confirms that the UN's
            Immunity is Unconditional . . . . . . . . .  14

ii

PAGE

    4.  The UN's Immunity Has Been Consistently Recognized by Foreign and International Authorities . . . . . . . . . .  18

    5.  Appellants Are Not Entitled To Assert Breach of the Treaties . . . . . . . . . . . . .  22

  B.  The United Nations and MINUSTAH Have Not Expressly Waived Their Immunity . .  25

POINT II—Secretary-General Ban And Assistant Secretary-General Mulet Enjoy Immunity From Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

POINT III—Appellants' Constitutional Arguments Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

iii

## TABLE OF AUTHORITIES

*Cases*:

*Abbott v. Abbott,*
   560 U.S. 1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bisson v. United Nations,*
   2007 WL 2154181 (S.D.N.Y. July 27, 2007) . . . . 11

*Bisson v. United Nations,*
   2008 WL 375094 (S.D.N.Y. Feb. 11, 2008) . . . . . 11

*Broadbent v. Org. of Am. States,*
   628 F.2d 27 (D.C. Cir. 1980). . . . . . . . . . . . . . . . 13

*Brzak v. United Nations,*
   597 F.3d 107 (2d Cir. 2010) . . . . . . . . . . . . . *passim*

*Clinton County Com'rs v. U.S.E.P.A.,*
   116 F.3d 1018 (3d Cir. 1997) . . . . . . . . . . . . . . . 30

*Edye v. Robertson,*
   112 U.S. 580 (1884). . . . . . . . . . . . . . . . . . . . . . . 23

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,*
   525 U.S. 155 (1999). . . . . . . . . . . . . . . . . . . . . . . . 8

*Emmanuel v. United States,*
   253 F.3d 755 (1st Cir. 2001). . . . . . . . . . . . . . 7 , 9

*Guevara v. Peru,*
   468 F.3d 1289 (11th Cir. 2006) . . . . . . . . . . . . . . 28

*Kolovrat v. Oregon,*
   366 U.S. 187 (1961). . . . . . . . . . . . . . . . . . . . . . . . 8

iv

PAGE

*Lutcher S.A. Celulose e Papel v. Inter-Am. Dev. Bank,*
    382 F.2d 454 (D.C. Cir. 1983). . . . . . . . . . . . . . . . 13

*Medellin v. Texas,*
    552 U.S. 491 (2008). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mendaro v. World Bank,*
    717 F.2d 610 (D.C. Cir. 1983). . . . . . . . . . . . . . . . 13

*Mora v. New York,*
    524 F.3d 183 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 23

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004). . . . . . . . . . . . . . . . . . . . . . . . 23

*Swarna v. Al-Awadi,*
    622 F.3d 123 (2d Cir. 2010) . . . . . . . . . . . . . . . . . 26

*Tachiona v. United States,*
    386 F.3d 205 (2d Cir. 2004) . . . . . . . . . . . . . . 8, 14

*United States ex rel. Lujan v. Gengler,*
    510 F.2d 62 (2d Cir. 1975) . . . . . . . . . . . . . . . . . 24

*United States v. Bahel,*
    662 F.3d 610 (2d Cir. 2011) . . . . . . . . . . . . . . . . . 9

*United States v. Cty. of Arlington,*
    669 F.2d 925 (4th Cir. 1982) . . . . . . . . . . . . . . . . 28

*Van Aggelen v. United Nations,*
    311 Fed. Appx. 407 (2d Cir. 2009) . . . . . . . . . . . . 9

*Victory Transport Inc. v. Comisaria General de*
    *Abastecimientos y Transportes,*
    336 F.2d 357 (2d Cir. 1964) . . . . . . . . . . . . . . . . 30

v

PAGE

*Statutes*:

22 U.S.C. § 288a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 U.S.C. § 288d(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

28 U.S.C. § 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §§ 1602-11 . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Treaties*:

*Convention on the Privileges and Immunities of the*
    *United Nations*, Feb. 13, 1946, 21 U.S.T. 1418, 1
    U.N.T.S. 16, *entered into force with respect to the*
    *United States* Apr. 29, 1970, 21 U.S.T. 1418*A*
    *Human Rights Based Challenge* . . . . . . . . . *passim*

*Convention on the Privileges and Immunities of the*
    *Specialized Agencies of the United Nations*,
    33 U.N.T.S. 261 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United Nations Charter*, June 26, 1945, 59 Stat. 1031,
    TS 993, 3 Bevans 1153 . . . . . . . . . . . . . . . . . *passim*

*Vienna Convention on Diplomatic Relations*,
    23 U.S.T. 3227, TIAS No. 7502, 500 U.N.T.S.
    95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Other Authorities*:

*Report of the Preparatory Commission of the United*
    *Nations,* (Dec. 23, 1945), UN Doc. PC/20 . . *passim*

vi

*Report to the President on the Results of the San Francisco Conference by the Chairman of the United States Delegation, the Secretary of State* (June 26, 1945), *reprinted in* 13 Digest of Int'l Law 37 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Foreign and International Authorities*:

*Al-Dulimi & Mont. Mgmt. Inc. v. Switzerland*, 2013 Eur. Ct. H.R. 1173 . . . . . . . . . . . . . . . . . . . . . 21

*Beer and Regan v. Germany,* App. 1999 Eur. Ct. H.R.. . . . . . . . . . . . . . . . . . . 21

*Kadi v. Council & Comm'n*, 2008 E.C.R. I-06351 . . . . . . . . . . . . . . . . . . . . . . 21

*Klausecker v. Germany*, 2015 Eur. Ct. H.R.. . . . . . . . . . . . . . . . . . . . . . . 21

*Maida v. Admin. for Int'l Assistance*, 23 ILR 510 (It. Ct. Cass. 1955). . . . . . . . . . . . . . . 20

*Nada v. Switzerland*, 2012 Eur. Ct. H.R. 1691 . . . . . . . . . . . . . . . . . . . . 21

*Perez v. Germany*, 2015 Eur. Ct. H.R. . . . . . . . . . . . . . . . . . . . . . . . 18

*Stavrinou v. United Nations*, (1992) CLR 992, ILDC 929 (CU 1992) (Sup. Ct. Cyprus 17 July 1992) . . . . . . . . . . . 18, 19

*Stichting Mothers of Srebrenica Ass'n v. Netherlands*, 2013 Eur. Ct. H.R., 40 ¶ 155 (Sup. Ct. Netherlands 2012) . . . . . . . . . . . . . . . . . . . . . . . . 19

vii

PAGE

*UNESCO v. Boulouis, Cour d'Appel*,
    Paris (Fr.), Jun. 19, 1998 . . . . . . . . . . . . . . . . . . . 20

*Waite and Kennedy v. Germany,*
    1999 Eur. Ct. H.R. 393 . . . . . . . . . . . . . . . . . . . . . 21

*Articles*:

*Challenging Acts of other United Nations' Organs,*
    *Subsidiary Organs and Officials*,
    13-14 (Leuven Center for Global Governance
    Studies, Working Paper No. 49, 2010) . . . . . . . . 19

*In the Shadow of Waite and Kennedy*,
    1 Int'l Org. L. Rev. 59, 60 (2004) . . . . . . . . . . . . 19

*UN Immunity or Impunity? A Human Rights Based*
    *Challenge,*
    25 EUR. J. INT'L L. 239, 243 (2014) . . . . . . . . . . 19

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 15-455

―――――――――

DELAMA GEORGES, INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF DESILUS GEORGES AND ALL OTHERS
SIMILARLY SITUATED, ALIUS JOSEPH, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF MARIE-CLAUDE LEFEUVE
AND ALL OTHERS SIMILARLY SITUATED, LISETTE PAUL,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF
FRITZNEL PAUL AND ALL OTHERS SIMILARLY SITUATED,
FELICIA PAULE, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, JEAN RONY SILFORT,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

―v.―

UNITED NATIONS, UNITED NATIONS STABILIZATION
MISSION IN HAITI, EDMOND MULET, FORMER UNDER-
SECRETARY-GENERAL OF THE UNITED NATIONS
STABILIZATION MISSION IN HAITI, BAN KI-MOON,
SECRETARY-GENERAL OF THE UNITED NATIONS,

*Defendants-Appellees.*

―――――――――

## BRIEF FOR THE UNITED STATES OF AMERICA
## AS *AMICUS CURIAE*

―――――――――

2

**Interest of the United States**

The United States makes this submission pursu-
ant to 28 U.S.C. § 517 and Rule 29(a) of the Federal
Rules of Appellate Procedure, consistent with the
United States' obligations as a party to treaties gov-
erning the immunities of the United Nations ("UN").
The member states of the UN conferred absolute im-
munity on the UN in order to allow it to perform its
vital missions without facing the threat of lawsuits in
multiple countries, contradictory court orders issued
by tribunals around the world, judicial intervention
in sensitive policy and operational matters, and the
diversion of resources (provided by the member
states) to the burdens and expenses of litigation. And
it is only those member states—and not private
plaintiffs—which may seek remedies for alleged vio-
lations of the multinational treaty that created the
UN.

The United States has consistently asserted the
absolute immunity of the UN to lawsuits filed against
it in domestic courts, and courts, including the Sec-
ond Circuit, have consistently upheld the UN's im-
munity. Moreover, the UN's integral component, de-
fendant-appellee the United Nations Stabilization
Mission in Haiti ("MINUSTAH"), as well as defend-
ants-appellees Ban Ki-Moon, the Secretary-General
of the UN ("Secretary-General Ban"), and Edmond
Mulet, former Special Representative and Head of
the United Nations Stabilization Mission in Haiti and
current Assistant Secretary-General for UN Peace-
keeping Operations ("Assistant Secretary-General
Mulet"), also enjoy immunity from this lawsuit. Be-

3

cause the UN and its officials are immune from suit, this Court should affirm the district court's judgment dismissing this action for lack of subject matter jurisdiction.

**Statement of the Case**

### A. Conferral of Absolute Immunity Upon the UN

In 1942, twenty-four nations, including the United States, signed the United Nations Declaration, declaring that "complete victory over their enemies is essential to defend life, liberty, independence and religious freedom, and to preserve human rights and justice," and pledging those nations to the war effort. United Nations Declaration, *available at* http://www.un.org/en/aboutun/history/index.shtml. Building on that declaration, representatives of fifty countries met in San Francisco three years later to draft the Charter of the United Nations ("UN Charter") and establish the UN. *See id.*; *see also* Report of the Preparatory Commission of the UN (Dec. 23, 1945), UN Doc. PC/20, Introduction ¶ 1("Preparatory Commission Report"), *available at* http://www.un.org/ga/search/view_doc.asp?symbol=PC/EX/113/Rev.1. On June 26, 1945, the representatives signed the UN Charter. *See* UN Charter, June 26, 1945, 59 Stat. 1031, TS 993, 3 Bevans 1153. Article 1 of the UN Charter declares that the "[p]urposes of the United Nations [include] maintain[ing] peace and security," and "achiev[ing] international cooperation in solving international problems[.]" *Id.*, art. 1. Articles 104 and 105 of the UN Charter provide that the UN "shall enjoy in the territory of each of its Members such legal

4

capacity as may be necessary for the exercise of its functions" and "such privileges and immunities as are necessary for the fulfilment of its purposes." *Id.*, arts. 104, 105.

The day after the UN Charter was signed, the UN's Preparatory Committee, consisting of one representative from each of the UN Charter signatories, began meeting to propose recommendations to the member states regarding the UN's organization. *See* Preparatory Commission Report, Introduction ¶ 1. The Preparatory Commission also made recommendations defining the "legal capacity" and "immunities" that Articles 104 and 105 of the UN Charter conferred upon the UN. *Id.* at Chapter VII. Based on those recommendations, the UN General Assembly, on February 13, 1946, adopted the Convention on the Privileges and Immunities of the United Nations ("General Convention"), Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16, *entered into force with respect to the United States* Apr. 29, 1970, 21 U.S.T. 1418.

Article II of the General Convention addresses the UN's property, funds and assets. Article II, Section 2, specifically provides that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." General Convention, art. II, § 2 ("Section 2").

Article VIII of the General Convention addresses dispute resolution procedures. Article VIII, Section 29, provides: "The United Nations shall make provisions for appropriate modes of settlement of: (a) dis-

5

putes arising out of contracts or other disputes of a
private law character to which the United Nations is
a party." General Convention, art. VIII, § 29 ("Section
29").

## B.    The UN's Role in Haiti

MINUSTAH is a UN peacekeeping mission estab-
lished by the UN Security Council that reports direct-
ly to the Secretary-General, and is an integral part of
the UN. *See* United Nations: About the UN, http://
www.un.org/en/about-un/index.html (last visited July
22, 2015). The UN Security Council established MI-
NUSTAH on April 30, 2004, in order to, among other
things, "ensure a secure and stable environment
within which the constitutional and political process
in Haiti can take place[.]" Security Council Resolu-
tion 1542 (2004), I(a). On July 9, 2004, the UN and
the Government of Haiti entered into the Agreement
Between the United Nations and the Government of
Haiti Concerning the Status of the United Nations
Operation in Haiti. SA 38-50 ("Status of Forces
Agreement" or "SOFA"). The SOFA explicitly pro-
vides that MINUSTAH "shall enjoy the privileges and
immunities . . . provided for in the [General] Conven-
tion." SOFA, art. III, § 3.

In the aftermath of the devastating earthquake in
Haiti on January 12, 2010, the UN authorized the
deployment of 8,940 troops and 4,391 police to help
restore the country's security and stability. *See* http://
www.un.org/en/ga/search/view_doc.asp?symbol=S/
RES/1927(2010). MINUSTAH currently consists of
4,577 uniformed personnel, 317 international civilian

6

personnel, and 1,134 local civilian staff. *See* http://
www.un.org/en/peacekeeping/missions/minustah/
facts.shtml. In December 2012, the UN launched "the
Initiative for the Elimination of Cholera in the Island
of Hispaniola," and appointed a Senior Cholera Coor-
dinator, in order to respond to the cholera epidemic
and oversee cholera elimination efforts. *See* http://
www.un.org/News/dh/infocus/haiti/
UN_Support_Strategy_Elimination_Cholera%20_FE
B_2014.pdf. The UN has continued its work in Haiti
to combat the cholera epidemic. *See* http://www.onu-
haiti.org/wp-content/uploads/2014/12/UN-Factsheet-
Final-VersionCholera-October-November-2014.pdf.

## A R G U M E N T

### POINT I

### Appellants' Claims Against The United Nations And MINUSTAH Were Properly Dismissed For Lack Of Subject Matter Jurisdiction

#### A. The UN and MINUSTAH Are Immune From Suit Unless Such Immunity Is Expressly Waived

It is well-established that the UN and its subsidi-
ary organ MINUSTAH are absolutely immune from
suit in domestic courts.[1] *See, e.g.*, *Brzak v. United Na-*

────────

[1] As an organ of the UN, MINUSTAH enjoys the
same absolute immunity as does the UN under the
General Convention. *See Emmanuel v. United States*,
253 F.3d 755, 756 (1st Cir. 2001); *see also* A-130 ("As

7

*tions*, 597 F.3d 107, 112 (2d Cir. 2010). The district court therefore correctly rejected Appellants' argument that the UN's immunity from suit is conditioned upon the provision of an alternate mechanism to resolve Appellants' tort claims. Nothing in the General Convention or the SOFA suggests that the UN's immunity is conditional. To the contrary, as reflected by the text and drafting history of the General Convention, and as confirmed by every court to have considered the issue, the UN's immunity is absolute in the absence of an express waiver.

### 1. The UN and MINUSTAH Enjoy Absolute Immunity From Suit Pursuant to Section 2 of the General Convention

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008). Section 2 of the General Convention provides, in pertinent part, that "[t]he United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." The United States understands Section 2 of the Gen-

———————

a subsidiary organ of the United Nations, MINUSTAH is also entitled to the privileges and immunities provided for in the General Convention."). Indeed, as noted above, the SOFA explicitly provides that MINUSTAH "shall enjoy the privileges and immunities . . . provided for in the [General] Convention." SOFA, art. III, § 3.

8

eral Convention to mean what it unambiguously says: the UN, including MINUSTAH, enjoys absolute immunity from this or any suit unless the UN itself expressly waives its immunity. The provision could not be any clearer. The word "except" is followed by a single exception: express waiver. Section 2 does not admit of any other exceptions or preconditions, it does not cross-reference other sections of the treaty, and it does not contain any caveats. It therefore establishes the UN's absolute immunity from suit, absent an express waiver, in unequivocal terms.

To the extent there could be any alternative reading of the General Convention's text, the Court should give deference to the Executive Branch's interpretation of the General Convention. *See, e.g.*, *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight."); *Tachiona v. United States*, 386 F.3d 205, 216 (2d Cir. 2004) (interpreting the General Convention and noting, "in construing treaty language, '[r]espect is ordinarily due the reasonable views of the Executive Branch'" (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168 (1999))). Both the plain language of the General Convention and the understanding of the Executive Branch therefore yield the same conclusion —that the UN is immune from Appellants' action.

In light of the unequivocal treaty language and the views of the Executive Branch, it is unsurprising that courts, including the Second Circuit, have uni-

9

versally recognized that the United Nations "enjoys absolute immunity from suit unless 'it has expressly waived its immunity.'" *Brzak*, 597 F.3d at 112 (quoting General Convention); *see also United States v. Bahel*, 662 F.3d 610, 623 (2d Cir. 2011) ("[T]he plain language of Article II leaves no doubt that the U.N. can only waive immunity for itself . . . expressly."); *Van Aggelen v. United Nations*, 311 Fed. Appx. 407 (2d Cir. 2009); *Emmanuel*, 253 F.3d at 756 n.2.[2]

—————

[2] In *Brzak*, this Court held that the UN is also immune under the International Organizations Immunities Act ("IOIA"). 597 F.3d at 112-13. The IOIA provides in relevant part that designated international organizations, including the UN, enjoy "the same immunity from suit and every form of legal process as is enjoyed by foreign governments." 22 U.S.C. § 288a(b). Although the Court has not ruled on whether this immunity is absolute or subject to the exceptions to immunity provided for in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11, 1630 ("FSIA"), that dispute is irrelevant where there is no relevant FSIA exception, *Brzak*, 597 F.3d at 112-13, as is the case here. The IOIA does not mention any requirement that an international organization provide for alternative dispute mechanisms. Accordingly, the UN is immune under the IOIA as well as the General Convention.

10

### 2. The Text of the General Convention Confirms that the UN's Immunity is Not Preconditioned upon Compliance with Section 29

The plain language of the treaty makes clear that the immunity conferred upon the UN by Section 2 is not conditioned upon compliance with the settlement resolution provisions found in Section 29(a) of the General Convention. Section 29 provides: "The United Nations shall make provisions for appropriate modes of settlement of: (a) disputes arising out of contracts or other disputes of a private law character to which the United Nations is a party." General Convention, art. VIII, § 29. Nothing in Section 29(a) states, either explicitly or implicitly, that compliance with its terms is a precondition to the UN's immunity under Section 2. Conversely, Section 29(a) is not even referenced in Section 2, let alone listed as a precondition or an exception to the immunity afforded the UN under that provision. Appellants argue, in effect, that such a precondition should exist, but the text of the General Convention makes clear that it does not.

This Court has previously rejected an almost identical argument regarding the interplay between Section 29 and Section 2. In *Brzak*, plaintiffs argued that, where there are "inadequacies with the [UN's] internal dispute resolution" that would preclude a party from obtaining relief from the UN, the UN could no longer claim its immunity from suit under Article 2. *Brzak*, 597 F.3d at 112. This Court disagreed, holding that "crediting this argument would read the word 'expressly' out of the [General Conven-

11

tion]." *Id.* The *Brzak* decision therefore reaffirmed that the UN "enjoys absolute immunity" regardless of whether a party would have adequate recourse under Section 29 to alternate claims resolution procedures. *Id.*

The district court below, in applying the *Brzak* decision to the instant case, noted that the language in Section 29

> may suggest that section 29 is more than merely aspirational—that it is obligatory and perhaps enforceable. But even if that is so, the use of the word "shall" in section 29 cannot fairly be read to override the clear and specific grant of "immunity from every form of legal process"—absent an express waiver—in section 2, as construed by the Second Circuit.

SA 6; *see also Bisson v. UN*, 2007 WL 2154181, at *9 (S.D.N.Y. July 27, 2007) (recommendation by magistrate judge, adopted, 2008 WL 375094 (S.D.N.Y. Feb. 11, 2008)) ("[S]ection 29(a) of the [General] Convention does not contain any language effecting an express waiver under any circumstances. Even assuming arguendo that the UN and the [World Food Programme] have failed to provide an adequate settlement mechanism for Bisson's claims, such a failure does not constitute the equivalent of an express waiver of immunity. An express waiver may not be inferred from conduct."). Therefore, the existence or adequacy of an alternative remedy is irrelevant to a court's immunity analysis.

12

Appellants' arguments that *Brzak* is not controlling, *see* Brief for Appellants ("Ap. Br.") at 38-40, miss the mark. First, Appellants' assertion that "*Brzak* concerned the interpretation of a waiver of immunity" and therefore "has no bearing on whether compliance with Section 29 is a condition precedent to Section 2 immunity," *id.* at 39-40, attempts to draw a distinction where none exists. Regardless of whether the issue is styled as an issue of waiver or a condition precedent, the question remains the same: whether the UN's immunity is vitiated by a failure to provide an alternate mode of dispute resolution under Section 29. And as every court to have considered the issue has held, the answer is no.

Second, that the plaintiffs in *Brzak* had access to an allegedly inadequate dispute resolution process while Appellants allegedly were not given access to any procedure, *see* Ap. Br. at 41-42, is not a meaningful distinction, as the Court's decision did not turn on the existence of an alternative claim process. Indeed, the Court found the inadequacies of these alternative measures to be entirely irrelevant to the immunity question. 597 F.3d at 112. Rather, the *Brzak* decision was based on the language of Section 2, which provides the UN with "absolute immunity" that can be abrogated only by express waiver. *Id.*

The fact that *Brzak* involved an employment dispute is similarly irrelevant. The *Brzak* decision did not purport to read the immunity provisions of the General Convention more broadly because the underlying dispute involved employment claims. Furthermore, the cases cited by Appellants regarding the

13

immunities of international organizations to em-
ployment lawsuits are inapposite, as none involved
the UN and the immunity provisions of the General
Convention. *See* Ap. Br. at 43-44 (citing *Mendaro v.
World Bank*, 717 F.2d 610 (D.C. Cir. 1983) (involving
the World Bank); *Broadbent v. Org. of Am. States*,
628 F.2d 27 (D.C. Cir. 1980) (involving the Organiza-
tion of American States); *Lutcher S.A. Celulose e
Papel v. Inter-Am. Dev. Bank*, 382 F.2d 454 (D.C. Cir.
1967) (involving the Inter-American Development
Bank)). In sum, the *Brzak* decision means what it
says, just as Section 2 of the General Convention
means what it says—the UN is absolutely immune
from suit absent express waiver.

Despite the unequivocal treaty language, Appel-
lants suggest that the Government's reading of the
General Convention is "unreasonable" because it
gives "no effect" to Section 29. Ap. Br. at 44, 46. Yet
this argument proceeds from a false premise—that
provisions of international treaties are only operative
to the extent they can be enforced through suits
brought by private litigants. This is not the case. As
discussed in more detail *infra* in Point I.A.5, it is the
state parties to the General Convention that have
rights under the treaty, and disputes between a
member state and the UN regarding the UN's appli-
cation of the provisions of General Convention can be
adjudicated, but only by the International Court of
Justice. General Convention, art. VIII, § 30.

14

### 3. The Drafting History of the General Convention Confirms that the UN's Immunity is Unconditional

Although the text of the treaty makes clear that the UN enjoys absolute immunity, the drafting history confirms that the UN's immunity is not contingent on whether or how it settles disputes. As the district court correctly held, "the [Convention's] drafting history . . . does not, as Plaintiffs argue, indicate the intent that such a mechanism is *required* in order for the UN to claim immunity in any particular case;" instead, it indicates "at most the commitment . . . that the UN will provide a dispute resolution mechanism for private claims." SA 6 (emphasis in original; citing *Tachiona*, 386 F.3d at 216).

The United States representative to the UN understood, from the date that the UN Charter was signed, that

> [t]he United Nations, being an organization of all of the member states, is clearly not subject to the jurisdiction or control of any one of them and the same will be true for the officials of the Organization. The problem will be particularly important in connection with the relationship between the United Nations and the country in which it has its seat.

Report to the President on the Results of the San Francisco Conference by the Chairman of the United States Delegation, the Secretary of State (June 26, 1945), *reprinted in* 13 Digest of Int'l Law 37 (1963).

15

Thus, the work of building on the privileges and immunities provisions of the UN Charter, including the statement that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes," Charter § 105(1), was undertaken with the understanding—at least as far as the United States was concerned—that the UN would be absolutely immune from the jurisdiction of all of its members.

Before the Preparatory Commission transmitted a draft convention to the General Assembly for its consideration, the Commission studied a set of precedents for the UN's privileges and immunities. *See* Preparatory Commission Report, Chapter VII, Annex to Study of Privileges and Immunities.[3] The Commission evaluated approaches ranging from absolute immunity subject only to waiver, to immunity provisions that would permit lawsuits in the national courts under various circumstances. *See id*. The General Assembly, in approving the General Convention, chose absolute immunity.

Appellants have not identified anything in the drafting history of the General Convention that would suggest that the drafters of the General Con-

_____

    [3]   Appellants cite to the Report of the Executive Committee of the Preparatory Commission, which was addressed to the Preparatory Commission. *See* Ap. Br. at 28-29; A-201-205. The Preparatory Commission based much of its work on that of the Executive Committee. *See* Preparatory Commission Report, ¶¶ 1-4.

16

vention intended that compliance with Section 29 is a
precondition to an assertion of immunity under Sec-
tion 2. For example, the isolated statements culled by
Appellants from the Report of the Executive Commit-
tee of the Preparatory Commission refer alternately
to the immunities requested by diplomats, Ap. Br. at
16 (quoting A-203 (the Study on Privileges & Immun-
ities, PC/EX/113/Rev.1, at 70, Nov. 12, 1945,¶ 7)), and
to the immunities and privileges of "specialized agen-
cies" such as the International Monetary Fund and
the International Bank for Reconstruction and Devel-
opment, which operate independently of the UN and
whose privileges and immunities are the subject of a
separate treaty,[4] Ap. Br. at 16 (quoting A-203 ¶ 5).
Not only do these passages not address the immunity
of the UN itself, neither of these selections so much
as refers to alternate dispute procedures, let alone
indicates that the establishment of such procedures is
a precondition to immunity.

Similarly inapposite is the statement by the UN's
Executive Committee of the Preparatory Commission
to the effect that, when the UN enters into contracts

_____

[4] *See* Convention on the Privileges and Immuni-
ties of the Specialized Agencies of the United Nations
33 U.N.T.S. 261 ("Specialized Agencies Convention").
The United States is not a party to the Specialized
Agencies Convention. *See* UN Treaty Collection, Sta-
tus as of June 25, 2014, *available at* https://
treaties.un.org/Pages/
ViewDetails.aspx?src=TREATY&mtdsg_no=III-
2&chapter=3&lang=en.

17

with private individuals or corporations, "it *should* include in the contract an undertaking to submit to arbitration disputes arising out of the contract, *if it is not prepared to go before the Courts.*" Ap. Br. at 28 (quoting A-203 ¶ 7) (first emphasis added). The use of the word "should" is hortatory and undermines Appellants' position that the UN's immunity is conditioned upon providing a dispute resolution mechanism.

Nor do drafts of the General Convention state that providing access to alternative methods of dispute resolution is a "critical pre-condition to . . . immunity," as Appellants argue. Ap. Br. at 29. There is no suggestion in the drafting history that the UN's immunity would be abrogated if the UN does not comply with another provision of the General Convention. To the contrary, the provisions for UN immunity and dispute resolution mechanisms consistently remained in separate articles and sections of the draft convention, without any link between them.

Although Appellants claim that such a link can be found in the title of a draft of a predecessor to Section 29, that title referred to the "Control of Privileges and Immunities of *Officials*[,]" and not the UN itself. A-302 art. 8 (emphasis added). More importantly, the draft of that section said nothing about any pre-conditions to the UN's immunity. *See* A-303-304. In any event, the language regarding "[c]ontrol" disappeared in subsequent drafts of the General Convention. *See* A-317-328. What is constant throughout all the drafts of the General Convention is that they provide for absolute immunity for the UN, subject only to

18

express waiver. *See* A-297, art. 4(1); A-320, 323, arts. 2 and 6; A-327-328. As the district court correctly held, *see* SA 6, the drafting history does not reflect any intent to make the UN's immunity in any particular case legally contingent on the UN providing a dispute resolution mechanism.

### 4. The UN's Immunity Has Been Consistently Recognized by Foreign and International Authorities

In interpreting a treaty, the "opinions of our sister signatories . . . are entitled to considerable weight." *Abbott v. Abbott*, 560 U.S. 1, 16 (2010). Yet neither Appellants nor the putative *Amici Curiae* can cite to a single case in which a foreign or international court failed to recognize the UN's immunity from suit under the General Convention, let alone found that the UN's purported failure to provide alternative remedies served to abrogate the UN's immunities under the General Convention. To the contrary, the opinions of other member states to the General Convention is in accord with, and thus reinforces, the United States' reading of the treaty.

Member states have recognized the UN's absolute immunity from suit. *See, e.g., Stavrinou v. United Nations* (1992) CLR 992, ILDC 929 (CU 1992) (Sup. Ct. Cyprus 17 July 1992). Indeed, many of the cases cited by Appellants and *Amici* themselves upheld the UN's immunity from suit. *See Perez v. Germany*, 2015 Eur. Ct. H.R. ¶¶ 78, 86 (upholding Germany's decision to grant immunity to the UNDP, even where UN's employment dispute resolution process ap-

19

peared to violate the German constitution); *Stichting Mothers of Srebrenica Ass'n v. Netherlands*, 2013 Eur. Ct. H.R., 40 ¶ 155 (Sup. Ct. Netherlands 2012) (noting that "the question of immunity from legal process is distinct from the issue of compensation for any damages incurred as a result of acts performed by the United Nations" (further citations omitted)); *Stavrinou*, (1992) CLR 992, ILDC 929 (CU 1992).[5]

---

[5] Even the international law scholars cited by Appellants and *Amici Curiae* confirm that courts have consistently interpreted the UN's immunity as absolute. *See* August Reinisch and Ulf Andreas Weber, *In the Shadow of Waite and Kennedy*, 1 Int'l Org. L. Rev. 59, 60 (2004) ("[T]he General Convention . . . speaks of immunity from suit in an unqualified way. This unqualified, hence unlimited immunity has been generally, and particularly by the UN itself, understood to mean absolute immunity."); Rosa Freedman, *UN Immunity or Impunity? A Human Rights Based Challenge,* 25 EUR. J. INT'L L. 239, 243 (2014) ("Courts, generally, have interpreted section 2 [of the General Convention] as granting absolute immunity to the UN."); Jan Wouters and Pierre Schmitt, *Challenging Acts of other United Nations' Organs, Subsidiary Organs and Officials* 13-14 (Leuven Center for Global Governance Studies, Working Paper No. 49, 2010) ("[National jurisdictions] appear unanimously to fall back on Article II, section 2 of the General Convention and accept the absolute immunity of the UN.").

20

The authorities relied upon the various *Amici Curiae* are not to the contrary. Many of these cases concern organizations other than the UN, *see* Docket No. 64-3, Brief of International Law Scholars and Practitioners as *Amici Curiae* ("Int'l Sch. Br.") at 6 (arguing that "the lack of an alternative and effective remedy for private law claims has been cited as grounds for courts to decline to recognize . . . immunity" in cases against Germany and the European Space Agency, but acknowledging that such decisions "did not directly address the question of the UN's protections"); *see also* Docket No. 86-1, Brief of European Law Scholars and Practitioners as *Amici Curiae* ("Eur. Amici Br.") at 8-11 (citing cases against a private corporation, Germany, the European Union, the African Development Bank, and the Arab League), and thus are plainly inapposite. And while two cases cited by the European Scholars *Amici* involve the immunity of specialized UN agencies, *UNESCO v. Boulouis, Cour d'Appel*, Paris (Fr.), Jun. 19, 1998, and *Maida v. Admin. for Int'l Assistance*, 23 ILR 510 (It. Ct. Cass. 1955), neither case involved interpretations of the General Convention or the similar immunity provisions of the Specialized Agencies Convention. Instead, in each case the organization's immunity was governed by bilateral agreements entered into between the agency and the country in which the suit had been brought. *See UNESCO* (interpreting the France-UNESCO Agreement of July 2, 1954, because France did not become a party to the Specialized Agencies Convention until 2000); *Maida*, 23 ILR at 510-515 (evaluating the International Refugee Organization's immunity under an agreement between

21

the I.R.O. and Italy; Italy, at the time, was not a party to the Specialized Agencies Convention).

These decisions therefore have no bearing on the scope of immunity afforded to the UN under the General Convention. As the Second Circuit has recognized, "whatever immunities are possessed by other international organizations, the [General Convention] unequivocally grants the United Nations absolute immunity without exception." *Brzak*, 597 F.3d at 112.[6]

The European Scholars *Amici* also point to a series of cases in which foreign courts invalidated local laws implementing UN sanctions resolutions, Eur. Amici Br. at 20-21, but in each of those cases courts held that they lacked jurisdiction to consider the lawfulness of the underlying UN resolution. *See Kadi v. Council & Comm'n*, 2008 E.C.R. I-06351, ¶¶ 287, 312; *Nada v. Switzerland*, 2012 Eur. Ct. H.R. 1691, ¶ 212; *Al-Dulimi & Mont. Mgmt. Inc. v. Switzerland*, 2013 Eur. Ct. H.R. 1173, ¶¶ 114, 134 (European Court of Human Rights did not reach the lawfulness of under-

––––––––––

[6] In a number of the cases relied upon by *Amici*, the immunity of other international organizations was upheld. *See* Eur. Amici Br. at 8 (citing *Waite and Kennedy v. Germany,* 1999 Eur. Ct. H.R. 393 (upholding Germany's decision to grant immunity to the European Space Agency); *Beer and Regan v. Germany* App. 1999 Eur. Ct. H.R. (same); *Klausecker v. Germany*, 2015 Eur. Ct. H.R. (upholding Germany's decision to grant immunity to the European Patent Office).

22

lying UN resolution, despite noting that the UN reso-
lution failed to create an alternative dispute resolu-
tion for individuals added to sanctions list). Thus, to
the extent relevant, these cases only serve to reaffirm
that foreign courts recognize that they lack jurisdic-
tion over proceedings directly challenging UN ac-
tions.

### 5. Appellants Are Not Entitled To Assert Breach of the Treaties

Recasting this same argument in a different form,
Appellants argue in the alternative that, even if Sec-
tion 29 is not a precondition to immunity, the UN
nonetheless cannot invoke the protections of Section
2 if it is in breach of Section 29 because "a material
breach of a treaty by one party excuses performance
by the other parties." Ap. Br. at 37. Yet this principle
of international law is of no assistance to Appellants,
as they are not parties to the relevant treaties. The
obligations under the General Convention and the
SOFA are owed to the parties to those agreements. It
is those parties, and not Appellants, that have a right
to invoke an alleged breach and seek an appropriate
remedy from among those legally available. Because
Appellants are not a party to either the General Con-
vention or the SOFA, they may not independently as-
sert an alleged breach and insist upon their own pre-
ferred remedy.

Because "a treaty is an agreement between states
forged in the diplomatic realm and similarly reliant
on diplomacy (or coercion) for enforcement," courts
have "recognize[d] that international treaties estab-

23

lish rights and obligations between States-parties and generally not between states and individuals, notwithstanding the fact that individuals may benefit because of a treaty's existence." *Mora v. New York*, 524 F.3d 183, 200 (2d Cir. 2008). As the Supreme Court explained:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Edye v. Robertson*, 112 U.S. 580, 598 (1884), *quoted in Mora*, 524 F.3d at 200. Because "the nation's powers over foreign affairs have been delegated by the Constitution to the Executive and Legislative branches of government," the Supreme Court "has specifically instructed courts to exercise 'great caution' when considering private remedies for international law violations because of the risk of 'impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs.'" *Mora*, 524 F.3d at 200 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727-28 (2004)).

Any claim regarding a purported breach of Section 29 therefore belongs exclusively to the parties to the

24

General Convention. "[E]ven where a treaty provides certain benefits for nationals of a particular state, . . . any rights arising out of such provisions are, under international law, those of the states[.]" *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir. 1975) (finding the fact that no state party argued that the United States violated the United Nations Charter was "fatal" to appellant's claim of violation of the treaty; "the failure of Bolivia or Argentina to object to [the U.S. actions] would seem to preclude any violation of international law").

Here, both the General Convention and the SOFA provide methods by which the member states or Haiti, respectively, may dispute the UN's interpretation of the UN's obligations under these agreements. The General Convention and the SOFA provide that any dispute between a state party and the UN shall be submitted to the International Court of Justice, *see* General Convention, art. VIII, § 30; SOFA art. VIII, § 58; and the SOFA provides that any dispute between MINUTSAH and the Government of Haiti shall be submitted to arbitration, *see* SOFA art. VIII, § 57. Accordingly, the treaties provide that the sovereign states—not private parties—can seek redress for any purported breach of the General Convention or of the SOFA. Because Appellants are private parties, they cannot prevail on arguments based on breaches of the provisions of the General Convention or the SOFA. *See Lujan*, 510 F.2d at 67.

25

### B. The United Nations and MINUSTAH Have Not Expressly Waived Their Immunity

The UN and MINUSTAH have not expressly waived their immunity from Appellants' suit. To the contrary, the UN has repeatedly asserted its immunity. On December 20, 2013, for example, Miguel de Serpa Soares, the United Nations Legal Counsel, wrote to Samantha Power, Permanent Representative of the United States to the United Nations, stating: "I hereby respectfully wish to inform you that the United Nations has not waived and is expressly maintaining its immunity with respect to the claims in [the instant] Complaint." A-130. The UN reasserted its absolute immunity on February 10, 2014. *See* A-134. After this appeal was filed, the UN continued to maintain its immunity and that of its officials in connection with this matter. As the only possible exception to the UN's immunity, express waiver, has not been met, the claims against the UN and MINUSTAH were therefore properly dismissed.

### POINT II

### Secretary-General Ban And Assistant Secretary-General Mulet Enjoy Immunity From Suit

The district court correctly held that Secretary-General Ban and Assistant Secretary-General Mulet are immune from suit. Federal courts, including the Second Circuit, have repeatedly recognized the immunity of UN officials pursuant to the General Convention, incorporating the immunities of the Vienna Convention. *See, e.g.*, *Brzak*, 597 F.3d at 113 (noting that, under the Vienna Convention, "current diplo-

26

matic envoys enjoy absolute immunity from civil and criminal process").

Article V, Section 19 of the General Convention provides that "the Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." *Id.* art. V, § 19. The privileges and immunities enjoyed by diplomats are governed by the Vienna Convention. 23 U.S.T. 3227, TIAS No. 7502, 500 U.N.T.S. 95. Article 31 of the Vienna Convention provides that diplomatic agents "enjoy immunity from the civil and administrative jurisdiction" of the receiving State— here, the United States—with a few exceptions that do not apply to this case. *See id.* art. 31; *see also Swarna v. Al-Awadi*, 622 F.3d 123, 134 (2d Cir. 2010) (the purpose of diplomatic immunity is "'to ensure the efficient performance of the functions of diplomatic missions as representing States'" (quoting Vienna Convention preamble cl. 4)).

Moreover, Secretary-General Ban's and Assistant Secretary-General Mulet's immunity will continue beyond their terms as Secretary-General and Assistant Secretary-General, respectively. Although a diplomatic agent's privileges and immunities cease soon after the diplomatic agent's functions cease, immunity continues "with respect to acts performed by such a person in the exercise of his functions as a member of the mission . . . ." Vienna Convention, art. 39(2). Article V, Section 18(a) of the General Convention likewise provides that UN officials are "immune from legal process in respect of words spoken or written and

27

all acts performed by them in their official capacity
. . . ." General Convention, art. V, § 18(a). *Accord* 22
U.S.C. § 288d(b) (IOIA provision conferring upon of-
ficers and employees of international organizations
"immun[ity] from suit and legal process relating to
acts performed by them in their official capacity and
falling within their functions").

Here, Secretary-General Ban and Assistant Secre-
tary-General Mulet are currently serving as diplo-
matic envoys, *see* A-129, and are therefore entitled to
diplomatic immunity under the Vienna Convention.
Further, because Appellants have sued Secretary-
General Ban and Assistant Secretary-General Mulet
for acts taken in their official capacity as UN officials,
*see* Complaint ¶¶ 21-22, they are immune for those
actions on that basis as well. Because the UN has not
waived, but rather has expressly asserted the im-
munity of Secretary-General Ban and Assistant Sec-
retary-General Mulet in this matter,[7] *see* A-129-135,
they both enjoy immunity from this suit.

Appellants point to no support for their novel the-
ory that the UN's purported breach of the General
Convention or the SOFA renders void the Secretary-
General and Assistant Secretary-General's immuni-

_____

[7] The General Convention provides that the
"Secretary-General shall have the right and the duty
to waive the immunity of any official in any case
where, in his opinion, the immunity would impede
the courts of justice and can be waived without prej-
udice to the interests of the United Nations." General
Convention, art. V, § 20.

28

ty.[8] To the contrary, this Court has recognized that, under the Vienna Convention, subject only to exceptions that do not apply in this case, "current diplomatic envoys enjoy absolute immunity from civil and criminal process . . . ." *Brzak*, 597 F.3d at 113. Because such immunity is absolute, it is necessarily not contingent on the UN's provision of dispute resolution mechanisms. Accordingly, this Court should likewise affirm the district court's decision that Secretary-General Ban and Assistant Secretary-General Mulet are immune from this lawsuit.

## POINT III

### Appellants' Constitutional Arguments Fail

Appellants' argument that the UN's immunity deprives United States citizens of their constitutional

––––––––––

[8]    Appellants cite the Vienna Convention preamble and *United States v. Cty. of Arlington*, 669 F.2d 925 (4th Cir. 1982), for the unremarkable proposition that diplomatic immunity is intended to benefit governments rather than individuals. *See* Ap. Br. at 48. Appellants' other citations are similarly not on point, as neither address diplomatic immunity under the UN Charter, the General Convention or the Vienna Convention. *See id.* (citing Restatement (Second) of Torts § 895D cmt. j (2015) (regarding police officer immunity); *Guevara v. Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) (evaluating Foreign Sovereign Immunities Act's commercial activity exception to sovereign immunity), *rev'd and remanded on other grounds*, 608 F.3d 1297 (11th Cir. 2010)).

29

right of access to the courts has already been considered and rejected by this Court. As this Court previously recognized when last confronted with this issue, Appellants' constitutional arguments "do[ ] no more than question why immunities in general should exist." *Brzak*, 597 F.3d at 114. Yet the existence of various types of immunities, which have been enshrined in the common law since this country was founded, have never been held to violate the Constitution. Appellants' argument is therefore without merit.

In *Brzak*, the plaintiffs, one of whom was a United States citizen, argued that granting the UN absolute immunity would violate their procedural due process right to litigate the merits of their case and their substantive due process right to access the courts. *See* 597 F.3d at 113. This Court disagreed, noting: "The short—and conclusive—answer is that legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been extended and modified over time, and are firmly embedded in American law." *Id.* The Court concluded that "[i]f appellants' constitutional argument were correct, judicial immunity, prosecutorial immunity, and legislative immunity, for example, could not exist," and accordingly upheld the UN's immunity from suit. *Id.*

Appellants attempt to distinguish *Brzak*, noting that plaintiffs there had access to an internal UN redress process. *See* Ap. Br. at 56. But the existence—or lack thereof—of any redress process was irrelevant to the Court's Constitutional analysis.

30

Constitutional Law Scholars *Amici Curiae*, rather than attempt to distinguish *Brzak*, suggest instead that *Brzak* was wrongly decided. These *Amici* argue that the various forms of immunity discussed in *Brzak*—including judicial, prosecutorial, legislative, sovereign and diplomatic—are "either based on the Constitution itself, or form the understanding of the Constitution at the time of ratification" and "therefore cannot themselves violate the Constitution." Docket No. 63-2, Brief of Constitutional Law Scholars and Practitioners as *Amici Curiae* ("Con. Sch. Br."), at 16.

This Court should not revisit its holding in *Brzak*, which correctly recognized that to attack the UN's immunity is to attack the concept of immunities generally, as there is no coherent basis to differentiate the UN's immunity from other forms of immunity. To the contrary, the UN's immunity is analogous to the immunity historically enjoyed by sovereign nations, an immunity which pre-exists the Constitution and has long been enshrined in this country's laws. *See, e.g., Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354, 357 (2d Cir. 1964). Although the UN is not a sovereign, the UN consists of sovereign member states, which conferred upon the UN immunity in order to allow it to perform its important missions. *See* Charter, art. 105(1). It has been long recognized that sovereign immunity does not violate the Constitutional right of access to the courts. *See, e.g.*, *Clinton County Com'rs v. U.S.E.P.A.*, 116 F.3d 1018, 1026 (3d Cir. 1997) (holding that statute that precluded suit against EPA did not violate right of access to the courts). *Amici*

31

can cite no support for their suggestion that the
granting of analogous immunity to the UN violates
the Constitution. And as a practical matter, *Amici*'s
argument would undermine the immunities not just
of the UN, but of every international organization
that is present in the United States and designated
under the IOIA.[9] Accordingly, this Court should ad-
here to its prior ruling in *Brzak*, and affirm the dis-
missal of Appellants' constitutional claims.

--------

[9]    Constitutional Law Scholars *Amici* further ar-
gue that courts apply a three-step analysis to deter-
mine "whether a barrier infringes on the fundamen-
tal right to access the courts," *see* Con. Sch. Br. at 4,
but fail to cite any authority for the proposition that
courts conduct this analysis when evaluating an or-
ganization's immunity. *See* Con. Sch. Br. at 4-13.

32

**CONCLUSION**

**For the foregoing reasons, the judgment of the district court should be affirmed.**

Dated:     New York, New York
           August 26, 2015

                    Respectfully submitted,

                    PREET BHARARA,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States of*
                        *America as Amicus Curiae.*

                    ELLEN BLAIN,
                    JEANNETTE VARGAS,
                    *Assistant United States Attorneys,*
                        *Of Counsel.*

BENJAMIN C. MIZER,
*Principal Deputy Assistant*
*Attorney General*
SHARON SWINGLE,
*Attorney, Appellate Staff,*
*Civil Division*
*Department of Justice*

MARY E. MCLEOD,
*Principal Deputy Legal Adviser*
HENRY AZAR, JR.,
*Attorney Adviser*
*Department of State*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word processing system used to prepare this brief, there are 6,936 words in this brief.

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York*

By: ELLEN BLAIN,
*Assistant United States Attorney*